IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DOUGLAS RICHARDSON,

    Plaintiff,

v.                                                                  No. 04-2627 B

GLAXOSMITHKLINE,

    Defendant.

___

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
___

    Plaintiff, Douglas Richardson, brought this products liability action against the Defendant, GlaxoSmithKline ("GSK"), under theories of negligence, strict liability, and breach of warranty for personal injuries he suffered as a result of approximately five suicide attempts allegedly caused by Paxil, a prescription medicine manufactured and marketed by GSK. Jurisdiction in this Court is premised upon diversity of citizenship. See 18 U.S.C. ¶ 1332. Before the Court is the motion of the Defendant for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons set forth below, the Court GRANTS the motion of the Defendant.

STANDARD OF REVIEW

    Rule 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for

1

summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following facts are undisputed unless noted.[1]  GSK is a pharmaceutical drug company

---

[1] Local Rule 7.2(d)(3) provides that

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied . . . shall respond to the proponent's number designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

that manufactures and markets the prescription drug medication Paxil CR ("Paxil"). (Compl. ¶ 3.) Paxil is a selective serotonin reuptake inhibitor ("SSRI") approved by the Food and Drug Administration (FDA) for the treatment of depression, generalized anxiety disorder, panic disorder, social anxiety disorder, obsessive-compulsive disorder, and post-traumatic stress disorder. (Compl. ¶ 5.) Richardson began taking Paxil on March 31, 2003 at the recommendation of Dr. Charles Brown, his physician.[2] (Compl. ¶ 10; Dep. Dr. Charles H. Brown ("Brown Dep.") at 8-9.) Richardson sought treatment from Brown because he was "getting depressed." (Dep. Douglas Richardson ("D. Richardson Dep.") at 51.) Specifically, Plaintiff complained that he was irritable, withdrawn, unable to concentrate and not sleeping well. (Id. at 51.) After examining Richardson, Brown diagnosed him with acute depression and malaise. (Brown Dep. at 20.) Brown gave Plaintiff a one-month supply of Paxil in the form of six sample-packages of the medicine at a 25 milligram dosage and instructed him to come back for a follow-up visit in three weeks to evaluate his response to the medication. (Compl. ¶ 10; Brown Dep. at 23, 27.)

Approximately one month later, on May 1, 2003, Richardson returned and reported to Brown that he "felt a little better" and had not experienced any negative side effects from taking the medication. (D. Richardson Dep. at 54.) After further discussion, Brown concluded that Plaintiff might suffer more from anxiety than depression. (Brown Dep. at 29.) Because Paxil is also used

---

LR 7.2(d)(3), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. On December 21, 2005 the Plaintiff filed his Statement of Undisputed Material Facts offering two additional facts. (Pl.'s Statement Undisp. Mat. Facts ("Pl.'s Facts") at 1.) However, because Richardson did not respond in opposition to the facts submitted by GSK as provided by Local Rule 7.2(d)(3), the Court must assume that those facts are undisputed.

[2] The Court notes that both the Complaint and Defendant's motion cite March 31, 2003 as the date Brown first prescribed Paxil CR to Richardson. (Compl.¶ 10; Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mot.") at 3.) However, the deposition testimony of Brown notes the date as March 3, 2003. (Dep. Dr. Charles H. Brown ("Brown Dep.") at 19-23.)

for the treatment of anxiety, and because Richardson had responded well to the drug, Brown wrote him a prescription for Paxil and directed him to come back in two months. (Id.) Richardson maintains that he continued to benefit from the medication in the following two months, but did not return for the suggested follow-up appointment. (D. Richardson Dep. at 54; Brown Dep. at 30.)

In July 2003, while still taking Paxil, Richardson's depression and anxiety worsened. (D. Richardson Dep. at 55.) On July 21, 2003, while at home watching television with his wife and after consuming one or two alcoholic drinks, Plaintiff attempted to commit suicide by taking several Lortab tablets and drinking a liter of rum.[4] (D. Richardson Dep. 55-56, 76; Dep. Jennifer Richardson ("J. Richardson Dep.") 50-51; Compl. ¶ 13.) As a result of ingesting the alcohol and medication, Richardson briefly fainted and, during that evening and the following day, vomited. (D. Richardson Dep. at 57.) Plaintiff did not seek medical treatment nor did he contact Brown regarding his worsening condition. (Id.) Six days later, on July 27, 2003, Richardson experienced an anxiety attack after consuming a few beers at his home. (Id. at 76; Compl. ¶ 14.) During the attack Plaintiff called both his wife and mother who came to his house. After they arrived, Richardson used a knife to cut his wrists and arms, but did not seek medical treatment following the incident. (Compl. ¶ 14.)

Less than one week later, on August 3, 2003, while Richardson was vacationing with his wife in Florida, he made a further attempt on his life.[5] (Compl. ¶ 15.) On that evening, Plaintiff and his wife went to dinner during which they both consumed alcohol. (J. Richardson Dep. at 75.) After returning to their hotel room, Richardson went into the bathroom and ingested approximately 28-29 Paxil tablets. (Id. at 79.) Shortly thereafter, Richardson told his wife what he had done and

---

[4] The Court notes that GSK contends that this incident took place on July 23, 2003. (Def.'s Mot. at 4.)

[5] GSK maintains that this attempt occurred on August 2, 2003. (Def.'s Mot. at 5.)

expressed anxiety over his work and marital relationship. (Id. at 78.) As a result of the ingestion of the medicine, Plaintiff suffered blurred vision and loss of motor control. (Compl. ¶ 15.) However, as with the previous incidents, he did not seek medical attention or contact Brown regarding his condition. (Id. at 74.) Two nights later, while still on vacation, Richardson and his wife went out for drinks and dinner at Universal Studios. (Id. at 86.) Before and during dinner, he consumed several mixed drinks and at least one bottle of wine. (Id. at 88-89.) When leaving Universal Studios, Richardson passed out and was taken by ambulance to Orlando Regional Hospital. (Id. at 87.) After two days in the hospital, he was released and returned home. (Compl. ¶ 16.) Before he was discharged, a physician at the Orlando hospital refilled Richardson's prescription for Paxil, which he continued to take daily. (D. Richardson Dep. at 74.)

      Shortly after returning to Memphis, on August 11, 2003, Richardson again attempted to commit suicide. (Compl. ¶ 17.) After writing a suicide letter to his family, he ingested 60 Benadryl pills and 25-30 Paxil pills and consumed nine 16-ounce cans of beer. (Def.'s Mot. Ex. C at 1135.) Before lapsing into a coma, Plaintiff contacted his wife, who went to their home and called an ambulance. (Compl. ¶ 17.) Richardson was taken to Methodist North Hospital where he spent two days in the intensive care unit before being transferred to the Delta Medical Center Behavioral Health Unit. (Id.) Plaintiff stayed three days in the Behavioral Health Unit under the treatment of Dr. David Knott. (Id.) During this time, Knott discontinued his Paxil treatment. (Dep. Dr. David H. Knott ("Knott Dep." at 31.) After diagnosing Richardson with Major Depressive Disorder and Alcohol Dependence, Knott prescribed Lexapro, an alternative SSRI, and Antabuse, a medication which helps alcoholics stop drinking by making them sick upon alcohol consumption. (Knott Dep. at 23-31.) It is undisputed that the Plaintiff has not taken Paxil since August 11, 2003. (D.

Richardson Dep. at 81; J. Richardson Dep. at 145.)

On August 23, 2003, Plaintiff ingested 200 Benadryl tablets in a further attempt to commit suicide. (D. Richardson Dep. at 83.) As a result of his actions, Richardson was again hospitalized. Knott discontinued his treatment on Lexapro and, in its place, prescribed the anti-depressant Effexor. (Knott Dep. at 40-41.) Unlike Paxil and Lexapro, Effexor is not an SSRI, but does have an SSRI component. (Id.) However, less than three weeks later, on September 23, 2003, Richardson once again attempted to overdose, this time by ingesting 200 Benadryl tablets and consuming six 24-ounce beers. (J. Richardson Dep. at 143.) While in intensive care for the effects of the Benadryl, it was discovered that Richardson had bilateral pneumonia, the likely result of his last overdose on the drug. (J. Richardson Dep. at 144.) Knott continued to treat Richardson during his hospitalization and following his discharge around October 3, 2003. (J. Richardson Dep. at 142.) In November, 2003 Richardson complained to Knott about suicidal thoughts, however, he did not further act on these ideas. (Knott Dep. at 48.)

Knott discontinued Richardson's treatment with anti-depressants in March 2004. However, after his condition worsened, Plaintiff again began anti-depressant treatment. (Knott Dep. at 46.) Since taking Paxil, Richardson's depression has also been treated with Lexapro, Effexor and Cymbalta. (Id. at 40-41, 46-47.) As of July 15, 2005, Knott has been treating Richardson for Major Depressive Disorder. (Id. at 46.) As part of that treatment, Plaintiff takes Antabuse for alcohol dependance, Cymbalta for depression, and Trazodone and Gabitril for sleeping. (Id. at 48.)

Plaintiff commenced this action on August 10, 2004 seeking $4 million in compensatory and punitive damages for the personal injuries he suffered as a result of the suicides attempts allegedly caused by Paxil. On November 18, 2005, GSK filed the instant motion for summary judgment to

6

which the Plaintiff has responded. In its motion, GSK claims that Richardson has failed to create a genuine issue of material fact as to whether the Defendant's product caused his injuries. The Defendant further submits that the learned intermediary doctrine bars any claims by Plaintiff.

ANALYSIS

Federal courts considering diversity cases must apply state law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Although the Plaintiff's complaint does not cite the specific basis for his allegations, product liability suits in Tennessee are governed by the Tennessee Products Liability Act of 1978, codified at Tennessee Code Annotated § 29-28-101, et seq. The statute applies to "all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." TENN. CODE ANN. § 29-28-102(6); see also Vaughn v. DP Packaging, Inc., No. 99-6671, 2001 WL 966278, at *2 (6th Cir. Aug. 16, 2001); Coffey v. Dowley Mfg., Inc., 187 F.Supp.2d 958, 967 (M.D. Tenn. 2002). Such actions include, but are not limited to, "all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]" TENN. CODE ANN. § 29-28-102(6).

Under the statute, a manufacturer or seller of a product may be liable for injuries "caused by the product" shown to have been "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." TENN. CODE ANN. § 29-28-105(a); see also Pride v. BIC Corp., 218 F.3d 566, 580 (6th Cir. 2000), reh'g and suggestion for reh'g en banc den. (Sept. 14,

7

2000). In order to recover, a plaintiff must show that "the product manufactured and sold by the defendant proximately caused the injuries [he] allege[s] to have sustained." Bailiff v. Manville Forest Products Corp., 772 F.Supp. 1578, 1580 (S.D. Miss. 1991) (citing Higgs v. General Motors Corp., 655 F.Supp. 22, 23, 26 (E.D.Tenn.1985), aff'd, 815 F.2d 80 (6th Cir.1987); Caldwell v. Ford Motor Co., 619 S.W.2d 534, 536-39 (Tenn.Ct.App.1981); Wyatt v. Winnebago Indus., Inc., 566 S.W.2d 276, 280-81 (Tenn.Ct.App.1978)). To be a proximate cause, the cause "must be such that had it not happened the injury would not have been inflicted." Shouse v. Otis, 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). "[U]nder Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects." Pride, 218 F.3d at 580 (citing Fulton v. Pfizer Hosp. Prod. Group, Inc., 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993), app. den. (Tenn. 1994)).

In the instant motion, GSK maintains that summary judgment is appropriate because Richardson has failed to create a genuine issue of material fact as to whether Paxil caused his suicide attempts and associated injuries. Specifically, the Defendant contends that Plaintiff has failed to offered an admissible expert opinion on the issue of causation, and thus, as a matter of law, cannot establish the essential elements of his claim. Prior to the deadline established by the Court, the Plaintiff designated Dr. Richard Parent, a toxicologist, as his expert witness. However, Parent acknowledged that the only report he has submitted on this matter "should not be construed as a causation report." (Def.'s Mot. Ex. J at 4.) Similarly, in his deposition testimony, Parent further maintained that the report he filed was preliminary to a causation report and, on its own, was "not meant to withstand the Daubert challenge." (Dep. Richard A. Parent, Ph.D. ("Parent Dep.") at 143.) In response to the instant motion, Richardson apparently concedes that Parent's report and

deposition are not admissible as an expert opinion on the issue of causation.[6] (Pl.'s Resp. at 2.) Rather, Plaintiff argues that, even excluding Parent's testimony, there is "ample proof of causation" in the record which places liability for Richardson's suicide attempts "in part" on Paxil. (Id.) In support, Richardson directs the Court generally to the deposition testimony of his treating physician, Dr. David Knott, as well as to a letter from Knott to Plaintiff's counsel dated July 1, 2005. (Pl.'s Resp. Ex. 2.) According to the Plaintiff, Knott's testimony, in the form of the deposition and letter, provides a "competent medical causation opinion that Paxil was a contributing cause to [his] suicidal conduct." (Id. at 3.)

Richardson does not submit or cite to any specific portion of Knott's deposition in support of his argument. However, upon review, the Court notes several statements by Knott relevant to the instant determination. The physician testified that the problems Richardson cited as underlying his decision to attempt suicide, namely work-related stress, marital misunderstandings, a recent marriage and financial problems, were all "common factors that contribute to suicidal thought and behavior." (Knott Dep. at 23.) He further opined that alcohol was a contributing factor in Richardson's suicide attempts. (Knott Dep. at 31.) Knott also testified that he was aware of an association between SSRI's and suicidal ideations or suicidality. (Knott Dep. 19.) In justifying his decision in August 2003 to discontinue Richardson's treatment with Lexapro following a suicide attempt while Richardson was on that medication, Knott further alluded to a connection between SSRI's and Richardson's suicidal behavior:

---

[6] Specifically, Plaintiff states that he "designated as his expert witness a toxicologist by the name of Richard Parent, who had not actually completed his analysis of the medical causation issue at the time his deposition was taken." (Pl.'s Resp. at 2.) Because Plaintiff has not submitted any further reports or evidence indicating Parent's position on causation, the Court can only conclude, as GSK contends, that his opinion does not reach this issue.

9

> Q:   Why did you switch [Richardson] from Lexapro to Effexor?
>
> A:   I began looking at this that his abreaction to medication might not be specific to an SSRI but SSRI's in general, and so I thought, Let's go to something – Effexor has an SSRI component, but also has a dual diagnosis. It's a different kind of antidepressant. It has some norepinephrine/noranagesic, and I thought let's get away from SSRI's, we've had enough suicide attempts and this may not be specific to any particular SSRI but just in the family in general.

(Knott Dep. at 41.) More specifically to Paxil, Knott engaged in the following exchange:

> Q:   Are you aware of any scientific study that demonstrates that Paxil can cause suicidality in adult patients?
>
> A:   Yes, I have seen some studies; I can't recall right now, but it was more a part of a general, over-all review of SSRIs in general and Paxil was included in that.
>                                . . .
>
> Q:   You continue to prescribe Paxil in your practice?
> A:   Yes.
>
> Q:   You think it's safe?
> A:   Yes.
>
> Q:   You think it's effective?
> A:   Yes.

(Knott Dep. at 62-63.) The Court finds, however, that none of the submitted testimony states an opinion that, had Richardson not ingested Paxil, he would not have experienced the suicidal behavior complained of. See Shouse, 224 Tenn. 1, 448 S.W.2d at 676. Rather, it appears at most, that there were several contributing causes to the injuries, of which Paxil was only one.

The letter from Knott to Plaintiff's counsel dated July 1, 2005 further affirms this interpretation of the doctor's testimony.[7] In the letter, Knott clarifies his position regarding the

---

[7] The Court notes Plaintiff's assertion that the July 1, 2005 letter was attached as an exhibit to Knott's deposition. (Pl.'s Statement of Undisputed Facts ¶ 1.) However, Plaintiff has failed to submit the relevant portions of Knott's deposition or any other sworn statement by the physician authenticating the

cause of Plaintiff's suicidal behaviors.  First, Knott noted the following "[s]ignificant risk factors for suicidal behavior" exhibited by Richardson:

> 1. Diagnosis – Major depressive disorder recurrent severe with psychotic features and alcohol dependence.  These diagnoses would increase the suiciality in any patient regardless of whether or not alcohol consumption was involved in the suicide attempt.
> 2. Two of the suicide attempts requiring hospitalization did not involve the use of Paxil.
> 3.  Marital conflict documented in the patient's chart.
> 4. Financial problems documented in the patient's chart.
> 5. Occupational problems documented in the patient's chart.
> 6. Age and gender.
> 7.  Prescription of anti-depressant medications.

(Pl.'s Resp. Ex. 2 at 2.)  Then, having listed the factors present in Richardson's condition he considered significant, Knott concluded:

> In view of the above, it is my opinion that it is the combination of the above factors that "more likely than not contributed to [Richardson's] depression and suicidality and that the combination of these risk factors more likely than not exacerbated his condition.
>
> It is further my opinion that it is impossible to identify one particular factor or one particular medication that could be considered the proximate cause for his suicidal behaviors.  Any clinician who would attempt to do so would have to make an unwarranted cognitive leap that would inevitably result in mischievous conclusions.

---

letter.  While the portion of Knott's deposition included in support of Defendant's motion for summary judgment mentions a letter in which Knott clarified his opinion, the testimony does not indicate the date of the letter or other information from which this Court can confirm its authentication.  (Knott Dep. at 8.)  Accordingly, the admissibility of Knott's letter is questionable.  See Tolliver v. Federal Republic of Nigeria, 265 F.Supp.2d 873, 879 (W.D. Mich.2003) (noting that the Sixth Circuit, in accordance with Federal Rule of Civil Procedure 56(e), has held that courts should not consider unsworn or uncertified documents, unsworn statements, inadmissible expert testimony, or hearsay evidence in resolving a motion for summary judgment).  However, because the letter is not determinative of the matter, and in fact, tends to negate rather than bolster Plaintiff's position, the Court will consider it.  See Wiley v. United States, 20 F.3d 222, 226 (6th Cir.1994) ("If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived").

(Id.) Richardson maintains, based on the above evidence, that Knott has expressed a "firm, competent medical causation opinion that Paxil was a contributing cause to [his] suicidal conduct." (Pl.'s Resp. at 3.)  The Court does not agree.  Rather, the evidence submitted by Knott concludes that it is the "combination of factors" he listed which "more likely than not" contributed to and exacerbated his condition and suicidality.  (Id. Ex. 2 at 2.)  However, even conceding, as Plaintiff contends, that Knott has identified Paxil as an *independent* "contributing factor" to his injuries, the evidence does not rise to the level required to establish proximate cause.  Where, as in the instant case, two or more possible causes for an injury are identified, "the plaintiff must establish with reasonable certainty that his injury resulted from a cause for which the defendant would be liable." Bailiff, 772 F.Supp. at 1580 (citing Jones v. Mercer Pie Co., 187 Tenn. 322, 214 S.W.2d 46, 48-49 (1948)).  While Plaintiff need not establish that Paxil was the sole or even last cause of his injuries, he must demonstrate that it was a "substantial" or "predominate" factor in the causation of his alleged injuries.  Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 871 (Tenn.App.1985); see also Lovett v. Kelley, No. M2002-01078-COA-R3-CV, 2003 WL 21051816, *3 (Tenn.Ct.App. May 12, 2003) (noting that, when dealing with situations in which two or more causes combine to bring about an event or independently could have caused the event, Tennessee courts have stated that "liability can be imposed if the defendant's action was a significant factor in bringing about the plaintiff's injury.").  Knott's opinions do not provide a basis from which the Court can conclude that Paxil was a substantial, predominate, or significant factor, as compared to the others identified by Plaintiff's treating physician, in bringing about Richardson's injuries.

Because he has not offered any expert testimony establishing that Paxil is the proximate cause of the injuries he suffered as a result of his suicide attempts, Richardson cannot establish a key

element of his claim under the Tennessee Products Liability Act.  See Downs v. Perstorp Components, Inc. , 26 Fed.Appx. 472, 477 (6th Cir. 2002) ("without admissible expert testimony on causation, no reasonable jury could find for [the] plaintiff[] because Tennessee law requires proof of causation for both strict liability and negligence actions."); Pride, 218 F.3d at 580-81 (citing Fulton, 872 S.W.2d at 912).  As such, Defendant's motion of for summary judgment is GRANTED.

IT IS SO ORDERED this 31st day of January, 2006.

                                                            s/  J. Daniel Breen
                                                            UNITED STATES DISTRICT JUDGE